**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SEDGWICK CLAIMS MANAGEMENT**           **CIVIL ACTION**
**SERVICES, INC.**

                                                  **NO. 24-2942**

**VERSUS**

                                                  **SECTION: "G"(4)**

**TRACEY DODD, et al.**

**ORDER AND REASONS**

Before the Court are two Motions to Dismiss[1] filed by Defendants Halliwell Engineering Associates, Inc., McLarens, LLC, and Tracey Dodd. Defendants seek dismissal of Plaintiff's claims brought under Louisiana's Unfair Trade Practices Act ("LUTPA"). Defendants argue that Plaintiff Sedgwick Claims Management Services, Inc. ("Plaintiff") cannot maintain a claim under LUTPA because the factual allegations mirror a withdrawn claim for tortious interference with contract, which Plaintiff has acknowledged is not recognized by law in these circumstances. For the reasons stated herein, the Court finds that the factual allegations raised in support of the LUTPA claims are distinguishable from the allegations raised in support of the withdrawn tortious interference with contract claim. Considering the motions, the oppositions, the reply memoranda, the record, and the applicable law the Court denies the motions.

**I. Background**

On December 26, 2024, Plaintiff Sedgwick Claims Management Services, Inc. filed a Complaint in this Court against Defendants Tracey Dodd, Halliwell Engineering Associations,

---

[1] Rec. Doc. 38; Rec. Doc. 39.

1

Inc., and McLarens, LLC (collectively "Defendants").[2] Plaintiff is a company that provides insurance claims management services and loss-adjusting services over a vast array of industries.[3] Plaintiff employed Defendant Tracey Dodd ("Dodd") from March 15, 2021, until her resignation on September 28, 2024.[4] Dodd worked remotely as a Managing Director until April 2022, at which time she became Managing Principal for the Large and Complex Loss Environmental Claim Group within EFI Global, Plaintiff's wholly owned subsidiary.[5] Plaintiff issued Dodd's paychecks and tax documents throughout the entirety of her employment with Plaintiff and EFI Global.[6] According to the Complaint, Plaintiff remained Dodd's employer after she transferred to EFI Global.[7]

On March 4, 2021, as a condition of her employment, Dodd signed a Colleague Agreement ("the Agreement") with Plaintiff, which contained Confidentiality and Non-Solicitation agreements.[8] The Agreement required Dodd to maintain the confidentiality of Plaintiff's information.[9] The Agreement also applied to "any parent, subsidiary or affiliate company, directly or indirectly, controlling, controlled by, or under common control with [Plaintiff]."[10]

On or about August 1, 2024, Dodd verbally informed her supervisor that she would be

---

[2] Rec. Doc. 1.

[3] *Id.* at 3.

[4] *Id.* at 4.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 5.

[10] *Id.* at 4.

resigning from her position at Sedgwick Claims Management Services, Inc.[11] Dodd remained employed with Plaintiff until September 28, 2024, at which time Dodd indicated that she accepted an offer from Halliwell Engineering Associates, Inc. ("Halliwell").[12] On September 16, 2024, Dodd provided a written notice of resignation.[13]

According to the Complaint, Halliwell is a competitor of EFI Global.[14] The Complaint states that Halliwell did not previously provide environmental claims support and consulting services until after Dodd was hired.[15] According to Halliwell's website, its New Orleans location where Dodd is based, is the only location where Halliwell offers environmental services.[16] Halliwell shared a LinkedIn post announcing Dodd's hire and her role in leading "a new environmental consulting service offering."[17]

Dodd allegedly participated in the solicitation of at least ten of Plaintiff's employees to leave and join Halliwell and/or McLarens, LLC ("McLarens"), a subsidiary of Halliwell, in violation of the Agreement.[18] According to the Complaint, the employees were solicited to create an environmental claims support and consulting service line to compete with Plaintiff's subsidiary, EFI Global.[19]

On October 4, 2024, Plaintiff sent Dodd a letter placing her on notice of her contractual

---

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 8.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 9.

[19] *Id.* at 12.

obligations under the Agreement, particularly the prohibition against solicitation and the confidentiality clause.[20] On the same date, Plaintiff sent a letter to McLarens placing it on notice of Dodd's contractual obligations under the Agreement.[21] On October 7, 2024, Plaintiff sent a letter to Halliwell placing it on notice of Dodd's contractual obligations under the Agreement.[22] According to the Complaint, despite notice, Defendants' wrongful conduct has not stopped, and Dodd has continued to solicit additional employees of Plaintiff.[23]

The Complaint states that Defendants' actions give Halliwell and/or McLarens an unfair business advantage in the environmental claims and consulting industry, and Plaintiff has lost and stands to lose several employees to Halliwell and/or McLarens.[24] As a result of Defendants' actions, Plaintiff alleges it has suffered economic damages including, but not limited to, lost business and lost business opportunities, increased compensation and benefits to several employees in an effort to convince employees to stay with Plaintiff.[25]

In the original Complaint, Plaintiff brought claims against Dodd for breach of contract, and claims against all Defendants for civil conspiracy to breach a contract, tortious interference with contract, and injunctive relief.[26] Defendants filed motions to dismiss, arguing that Louisiana law does not support a tortious interference with contract claim under these circumstances.[27] On May

---

[20] *Id.* at 14–15.

[21] *Id.* at 15.

[22] *Id.*

[23] *Id.* at 16.

[24] *Id.*

[25] *Id.* at 17.

[26] *Id.* at 17–24.

[27] Rec. Docs. 17, 22.

14, 2025, the Court granted Plaintiff leave to file the Amended Complaint, and denied the motions to dismiss as moot.[28] The Amended Complaint adds claims for violation of Louisiana's Unfair Trade Practices Act ("LUTPA") and conspiracy to violate LUTPA against all Defendants, and removes the claim for tortious interference with contract.[29]

On May 20, 2025, Halliwell and McLarens filed a Motion to Dismiss.[30] On May 28, 2025, Dodd filed a Partial Motion to Dismiss, stating that she adopts the arguments set forth in Halliwell and McLarens' Motion to Dismiss.[31] On June 17, 2025, Plaintiff filed memoranda in opposition to the motions to dismiss.[32] On June 23, 2025, Defendants filed reply memoranda in further support of the motions to dismiss.[33]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motions*

Defendants explain that Plaintiff originally asserted two causes of action: civil conspiracy to breach a contract and tortious interference with contract.[34] Following a previous motion to dismiss, Plaintiff filed an Amended Complaint, asserting claims for violation of LUTPA, conspiracy to violate LUTPA, and injunctive relief.[35] Defendants argue Plaintiff's claims fail because the law does not allow Plaintiff to repackage a tortious interference claim as a LUTPA

---

[28] Rec. Doc. 34.

[29] Rec. Doc. 36 at 19.

[30] Rec. Doc. 38.

[31] Rec. Doc. 39.

[32] Rec. Doc. 40; Rec. Doc. 41.

[33] Rec. Doc. 42; Rec. Doc. 43.

[34] Rec. Doc. 38 at 2.

[35] *Id.*

claim.[36] Defendants contend, under Fifth Circuit precedent, LUTPA cannot apply to activity which is not actionable under Louisiana law.[37] Defendants aver that because Louisiana law does not recognize a claim for tortious interference with a contract against a corporate entity, Plaintiff cannot state a viable LUTPA claim arising out of those same alleged facts.[38] Defendants assert that the claim must also fail because Plaintiff does not identify what confidential information that Defendants have possession of.[39]

As it relates to Plaintiff's claim for civil conspiracy to violate LUTPA, Defendants contend civil conspiracy is not an actionable claim under Louisiana law.[40] Defendants argue that because Plaintiff cannot state a viable LUTPA claim against any defendant, no claim for civil conspiracy to violate LUTPA exists.[41] Even assuming Plaintiff could state a LUTPA claim against Dodd, Defendants aver Plaintiff may not assert a claim for civil conspiracy to violate LUTPA to circumvent Louisiana law's refusal to recognize a tortious interference with contract claim under these facts.[42]

Defendants argue Plaintiff is not entitled to injunctive relief.[43] Defendants contend injunctive relief is a remedy sought to redress the wrongs alleged in the underlying substantive claims, and because Plaintiff's underlying substantive claims must be dismissed, Plaintiff cannot

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 3.

[41] *Id.*

[42] *Id.*

[43] *Id.*

obtain injunctive relief against Defendants Halliwell or McLarens.[44]

Defendants contend that the Fifth Circuit has held that similar allegations did not fit within the "very narrow" framework for a tortious interference claim.[45] Defendants further argue that the Fifth Circuit found that although LUTPA "is broadly written, it cannot apply to activity which is not actionable under Louisiana law."[46] Defendants aver that other sections of this Court have made similar findings with respect to analogous LUTPA claims.[47]

Defendants explain that Plaintiff originally pled that it sent a letter placing Defendants on notice of Dodd's obligations per the contractual agreement.[48] Defendants contend that defense counsel replied to the letter denying any past violations and any intent to commit future violations, and said reply letter is now being used by Plaintiff to constitute fraudulent misrepresentations.[49] Defendants aver that the letter is a part of the same facts originally pled to support a withdrawn tortious interference claim, which must fail because it does not rise to the level of a LUTPA violation.[50] Defendants further argue that a letter sent by an attorney in response to threatened litigation cannot form the basis of a LUTPA claim.[51] Defendants contend the letter from its counsel does not constitute an unfair method of competition or unfair practice "in conduct of any trade or commerce" as required under the LUTPA statute.[52] Defendants assert that Plaintiff fails to allege

---

[44] *Id.*

[45] Rec. Doc. 38-1 at 8.

[46] *Id.* (citing *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.,* 949 F.2d 1384, 1392 (5th 1991)).

[47] *Id.* at 9.

[48] *Id.* at 11.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 12.

[52] *Id.*

that it relied on the letter from defense counsel or that Plaintiff suffered damage because of it.[53]

Defendants argue the Amended Complaint does not identify what confidential information Defendants allegedly deceptively maintained possession of.[54] Defendants contend there are no allegations that Dodd stole a particular document or copied certain files and shared with Defendants.[55] Because Plaintiff fails to identify the confidential information at issue, Defendants aver that Plaintiff's claim should be dismissed.[56]

As it relates to the claims against Dodd, Dodd argues Plaintiff cannot state a claim under LUTPA because the Amended Complaint fails to allege that Dodd's specific purpose in breaching her agreement was to harm competition, and it also fails to allege that Dodd's conduct violated any purpose of LUTPA.[57] Dodd argues Plaintiff's LUTPA claim is indistinguishable from its simple breach of contract claim, and LUTPA does not provide an alternate remedy for simple breaches of contract.[58] Dodd explains that a plaintiff alleging a breach of contract claim must also allege accompanying conduct that would suggest the defendant acted unlawfully or with improper means or with other behavior that would fall within the proscribed conduct of the statute in order to plausibly plead a LUTPA violation.[59] Dodd argues that her solicitation of Plaintiff's employees is not immoral, unethical, malicious, or designed to cause substantial injury.[60] Dodd avers that

---

[53] *Id.*

[54] *Id.* at 13.

[55] *Id.* at 14.

[56] *Id.*

[57] Rec. Doc. 39-1 at 6.

[58] *Id.*

[59] *Id.* at 9. (citing *Serigne v. Loupe Const. & Consulting Co.,* 2011 WL 1193025 at *2 (E.D. La. Mar. 24, 2011)).

[60] *Id.*

several courts have found that bare, conclusory allegations of deception, fraud, and other unethical

conduct is insufficient to state a claim under LUTPA.[61] Dodd argues the LUTPA claim against her

should be dismissed.[62]

### B.    *Plaintiff's Arguments in Opposition to the Motions*

In opposition, Plaintiff argues its LUTPA claim is not based on the same allegations as its

withdrawn tortious interference with contract claim.[63] Plaintiff contends the LUTPA claim is not

a repackaged tortious interference claim because the Amended Complaint contains specific

allegations that did not form the basis of the withdrawn tortious interference claim.[64] Specifically,

Plaintiff points out the following allegations raised in support of its LUTPA claim: (1) McLarens'

executive Christina Hodges' attempted to solicit Plaintiff's employee Elizabeth Witten on behalf

of Dodd, Halliwell, and McLarens; and (2) Dodd, Halliwell, and McLarens (through McLaren's

General Counsel Liz Tubb) then misrepresented their involvement in the recruitment of Plaintiff's

employees, and falsely represented to Plaintiff that they would prevent further breaches of Dodd's

agreement with Plaintiff, only to continue poaching Plaintiff's employees.[65] Plaintiff concedes that

the LUTPA claim is premised in part on similar conduct as its tortious interference claim, however,

Plaintiff contends the Amended Complaint contains new factual allegations that differentiate the

LUTPA claim from the tortious interference claim.[66]

Plaintiff contends the LUTPA claim stands in addition to its breach of contract claim

---

[61] *Id.* at 10–13.

[62] *Id.* at 13.

[63] Rec. Doc. 40 at 5.

[64] *Id.* at 6.

[65] *Id.*

[66] *Id.*

against Dodd.[67] Plaintiff avers the Fifth Circuit has recognized that in situations where the behavior forming the basis of the breach of contract claim has "deceptive and ethical undertones," both a LUTPA claim and a breach of contract claim may be brought.[68] Plaintiff argues Louisiana caselaw is clear that LUTPA applies to punish breaches of ethical standards arising from the "special relationship of trust between the employer and employee."[69] Plaintiff asserts the Amended Complaint stated sufficient facts to support a claim under LUTPA.[70]

While Defendants argue that Plaintiff has failed to identify the confidential information at issue, Plaintiff contends it is not required to plead its LUTPA claim with particularity.[71] Plaintiff contends it is also not required to plead that it unjustifiably relied on Defendants' misrepresentations.[72] Plaintiff avers that it plausibly alleged that Dodd breached the special relationship of trust through a series of deceptive and unethical acts, and thus, Plaintiff has satisfied its burden at the pleading stage.[73]

Plaintiff explains that it does not attempt to apply LUTPA to the practice of law, rather the letter from defense counsel included alleged misrepresentations about Defendants' involvement in the alleged poaching of Plaintiff's employees.[74] Plaintiff contends that Defendants provide no authority to support its assertion that the letter from defense counsel cannot be relied on to support

---

[67] *Id.* at 7.

[68] *Id.* (citing *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.,* 292 F.3d 471, 482 (5th Cir. 2002)).

[69] *Id.* (citing *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993)).

[70] *Id.* at 8.

[71] *Id.* at 9.

[72] *Id.*

[73] *Id.*

[74] *Id.* at 10.

the LUTPA claim.[75]

     As it relates to the claim for civil conspiracy to violate LUTPA, Plaintiff contends the conspiracy claim is grounded upon the factual allegations supporting the LUTPA claim.[76] Plaintiff points out that the Amended Complaint alleged that Dodd agreed and combined with McLarens' executive, Christina Hodges, to solicit Plaintiff's employee, Elizabeth Witten, and then concealed these actions when McLarens' general counsel, Liz Tubb, represented to Plaintiff that Dodd did not violate the agreement.[77] Plaintiff avers that allegations of knowing agreement and combination among defendants is sufficient to satisfy the meeting of the minds requirement to state a claim for conspiracy.[78]

     As it relates to the LUTPA claim asserted against Dodd, Plaintiff argues it has plausibly alleged injury to competition as required by LUTPA, specifically, Plaintiff points out that the Amended Complaint states that "Defendants' actions were calculated to, and did, damage [Plaintiff's] competitive position in the financial marketplace, and strengthen Defendants' respective position…"[79] Plaintiff acknowledges that LUTPA in not an alternative remedy for breach of contract claims, but notes that the Fifth Circuit has indicated that there are situations where the behavior forming the basis of the breach has "deceptive and unethical undertones."[80] Plaintiff avers Louisiana caselaw is clear that LUTPA applies to punish breaches of ethical

---

[75] Id.

[76] Id. at 11.

[77] Id.

[78] Id.

[79] Rec. Doc. 41 at 6.

[80] Id. (citing Tubos de Acero de Mexico, 292 F.3d at 482).

standards arising from the special relationship of trust between the employer and employee.[81] Plaintiff asserts that the breach of contract claim is based only on Dodd's conduct, and the LUTPA claim is based in part on Dodd's conduct premised on Dodd's breach of the special relationship of trust with Plaintiff through a series of deceptive and unethical acts committed by all Defendants collectively.[82]

As it relates to Plaintiff's request for injunctive relief, Plaintiff argues because he has plausibly stated a claim under LUTPA, the request for injunctive relief survives.[83] Alternatively, Plaintiff requests leave of Court to amend the complaint to cure any deficiencies.[84]

## C.    Defendants' Arguments in Further Support of the Motions

In further support of the motions, Defendants reiterate that if conduct is not actionable under a tortious interference with contract theory, the conduct is likewise not actionable by calling it a different name.[85] While Plaintiff contends it offers additional facts that set apart its LUTPA claim, Defendants assert these allegations are not new and they formed part of the tortious interference claim in the original Complaint.[86] Defendants argue the allegations raised by Plaintiff support a tortious interference with contract claim, which is not recognized by Louisiana law.[87] Defendants aver that Plaintiff amended the complaint once before and an additional amendment

---

[81] Id.

[82] Id. at 7.

[83] Id.

[84] Id.

[85] Rec. Doc. 42 at 1.

[86] Id. at 2.

[87] Id.

could not cure the fatal defect.[88]

Defendants point out that Plaintiff's allegation that Christina Hodges was involved in the supposed solicitation of Plaintiff's employee, Elizabeth Witten, was included in the original Complaint.[89] Defendants concede that the Amended Complaint does add a new detail, specifically that Christina Hodges was also allegedly involved in soliciting Ms. Witten in addition to McLarens' employee Mr. Tae, however, Defendants argue that this detail does not differentiate the LUTPA claim from the withdrawn tortious interference claim.[90] Defendants maintain that Plaintiff's grievance is that the alleged solicitation of Plaintiff's employees interfered with Dodd's employment contract.[91] Defendants assert that Plaintiff's efforts to state a LUTPA claim based on the supposed solicitation of Plaintiff's employees in interference with the employment contract must be dismissed.[92]

Defendants reiterate that the letter from defense counsel cannot support a LUTPA claim.[93] Defendants contend the letter is a part of the same facts alleged in the original Complaint.[94] Defendants argue the new detail changes nothing substantively.[95] Defendants aver that Plaintiff failed to allege that it relied on the letter or that it suffered damages because of the letter.[96] Defendants maintain that a letter from one lawyer to another after litigation was threatened does

---

[88] *Id.*

[89] *Id.* at 3.

[90] *Id.* at 4.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 5.

[94] *Id.*

[95] *Id.*

[96] *Id.* at 6.

not support a LUTPA claim.[97]

Defendants argue that Plaintiff's conclusory allegations that Defendants violated LUTPA by "deceptively maintain[ing]" unidentified confidential information does not support a LUTPA claim.[98] According to Defendants, because Plaintiff contends that any of its confidential information amounts to a trade secret, Local Rule 26.3 requires Plaintiff to identify that information with particularity.[99] Defendants aver that the LUTPA claim should be dismissed because (1) the assertion is dependent on a supposed interference with the Sedgwick-Dodd contract; (2) it rests solely on conclusory allegations and thus fails *Iqbal's* pleading requirements; and (3) Plaintiff identifies no new facts it could plead to cure this deficiency.[100]

Defendants aver that if Plaintiff's LUTPA claim fails, its claim for civil conspiracy to violate LUTPA must also be dismissed.[101] Defendants reiterate that the LUTPA and breach of contract claims are both premised on the breach of contract allegations, specifically that Dodd used Plaintiff's "confidential information" and solicited employees in violation of the employment contract.[102] Defendants aver that Louisiana law does not recognize a tortious interference with contract claim under these facts, nor does it recognize a claim for conspiracy to breach a contract.[103] Defendants assert that Plaintiff has not adequately pled any viable claim, and the Court

---

[97] *Id.*

[98] *Id.*

[99] *Id.* at 7.

[100] *Id.* at 7–8.

[101] *Id.* at 8.

[102] *Id.*

[103] *Id.*

should dismiss Plaintiff's claims with prejudice.[104]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[105] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[106] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[107] "Factual allegations must be enough to raise a right to relief above the speculative level."[108] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[109]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[110] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[111] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[112] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[104] *Id.* at 10.

[105] Fed. R. Civ. P. 12(b)(6).

[106] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[107] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[108] *Twombly*, 550 U.S. at 555.

[109] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[110] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[111] *Iqbal*, 556 U.S. at 678–79.

[112] *Id.* at 679.

statements" will not suffice.[113] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[114] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[115] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[116] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[117]

## IV. Analysis

Defendants argue that Plaintiff's claims under LUTPA should be dismissed because: (1) a LUTPA claim cannot arise from the same factual allegations as a failed tortious interference with contract claim; and (2) the Amended Complaint failed to identify the confidential information that Defendants allegedly possess.

In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[118] Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis."[119] The Louisiana Supreme Court has consistently held that in

---

[113] *Id.* at 678.

[114] *Id.*

[115] *Id.*

[116] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[117] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[118] La. Rev. Stat. § 51:1405.

[119] Keith E. Andrews, Comment, *Louisiana Unfair Trade Practices Act: Broad Language and Generous*

establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[120] "[T]he range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence.[121] Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.[122]

Notably, LUTPA was modeled after the Federal Trade Commission Act, and the two acts share the same goals: to protect consumers and to foster competition.[123] Specifically, these goals include halting unfair business practices and sanctioning the businesses that commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry.[124]

## A.    *Claims Against Dodd*

The Amended Complaint asserts claims against Dodd for breach of contract, violation of LUTPA, and conspiracy to violate LUTPA. Dodd argues the LUTPA claim against her should be dismissed because LUTPA is not an alternative remedy for a simple breach of contract claim.

---

*Remedies Supplemented by a Confusing Body of Case Law,* 41 Loy. L. Rev. 759, 762 (1996) (hereinafter "Andrews").

[120] *Cheramie Services, Inc. v. Shell Deepwater Prod.,* 09–1633, p. 11 (La. 4/23/10), 35 So.3d 1053, 1059.

[121] *Id.* at 11, 35 So.3d at 1059; Andrews, 41 Loy. L. Rev. at 763.

[122] *See, e.g., Cheramie Services,* 09–1633 at 12, 35 So.3d at 1060 ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA."); *Vermilion Hosp., Inc. v. Patout,* 05–82, p. 6 (La. App. 3 Cir. 6/8/05), 906 So.2d 688, 693 (noting that not all violations of the Louisiana Code of Ethics give rise to a cause of action under LUTPA and that persons aggrieved by such violations of the code of ethics are permitted to file a complaint with the Louisiana Board of Ethics or seek remedies under other statutes).

[123] *See* Andrews, 41 Loy. L. Rev. at 777.

[124] *See, e.g., Slough v. Fed. Trade Comm'n,* 396 F.2d 870 (5th Cir. 1968), *cert. denied,* 393 U.S. 980, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968) ("The aim of the [Act] is to stamp out unfair business practices and businesses which persist in practicing them."); *United States v. St. Regis Paper Co.,* 355 F.2d 688 (2d Cir.1966) (noting that the policy of the FTC Act is to promote and preserve competition); *Northam Warren Corp. v. Fed. Trade Comm'n,* 59 F.2d 196 (2d Cir. 1932) ("[The purpose of the Act] is to strike down at their inception practices which are unfair and which, if permitted to run their full course, would result in the creation of a monopoly and an undue restraint of trade.").

"[LUTPA] does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[125] Indeed, "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA,"[126] and this "egregiousness" often involves "the breach of a special relationship of trust."[127]

Dodd relies on *American Machinery Movers*[128] in support of her argument. In *American Machinery*, the plaintiff asserted that its former employee committed unfair trade practices by setting up a competing business while still employed with the plaintiff and by soliciting the plaintiff's customers.[129] However, the instant matter is distinct from *American Machinery* in that there was no agreement restricting the employee from competition or solicitation. The district court reasoned that "[w]ithout a restrictive agreement, at the termination of [his] employment, an employee can go to work for a competitor or form a competing business. Even before termination, the employee can seek other work or prepare to compete."[130] "Moreover, an employee may solicit customers from his former employee as long as he does so based on his memory, experience, or personal contacts, rather than through the use of confidential information of the former employer."[131] The court went on to state that "plaintiff submits no evidence that [the former

---

[125] *Cheramie Servs.,* 35 So.3d at 1060 (La. 2010) (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).

[126] *Cheramie Servs.,* 35 So.3d at 1060.

[127] *Cargill, Inc. v. Degesch Am., Inc.,* 875 F. Supp. 2d 667, 677 (ED. La. 2012).

[128] *Am. Mach. Movers, Inc. v. Mach. Movers of New Orleans, LLC*, 136 F. Supp. 2d 599 (E.D. La. 2001).

[129] *Id.* at *601.

[130] *Id.* at *604 (citing *United Group of National Paper Distributors v. Vinson,* 666 So.2d 1338, 1347 (La. App. 2d Cir. 1996)).

[131] *Id.* (citing *First Page Operating Under the Name and Corporate Entity, Groome Enterprises, Inc. v. Network Paging Corporation,* 628 So.2d 130, 132–33 (1993)).

employee] solicited [the employer's] customers while he was still employed at [employer's company] or that he used any confidential information to solicit [employer's] customers after he was terminated."[132]

In the instant matter, the Amended Complaint alleges that there was a valid employment agreement restricting the use of Plaintiff's confidential information and the solicitation of Plaintiff's employees, and after Dodd's employment ended, she used Plaintiff's confidential information to solicit Plaintiff's employees. The crucial elements that distinguish the breach of contract claim and the LUTPA claim against Dodd is "the breach of a special relationship of trust" and the alleged use of Plaintiff's confidential information in soliciting Plaintiff's employees. For these reasons, the Court finds that the allegations set out in the Amended Complaint plausibly assert a claim under LUTPA.

**B.    *Claims Against All Defendants***

In support of their argument that the LUTPA claim cannot arise from a failed tortious interference with contract claim, Defendants rely on *American Waste.* In *American Waste*, the Fifth Circuit held that LUTPA does not provide a cause of action for activity that is not actionable under Louisiana law.[133] In *American Waste*, the plaintiff asserted a cause of action against the defendant for intentional interference with a contract and also asserted a cause of action under LUTPA.[134] These two claims were based on the same underlying facts.[135] The Fifth Circuit first determined that the plaintiff could not state a cause of action for intentional interference with a contract

---

[132] *Id.*

[133] *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1392 (5th Cir. 1991).

[134] *Id.* at 1391.

[135] *Id.*

19

because the facts of the case did not fit into Louisiana's narrow holdings regarding intentional interference claims.[136] Next, the court was faced with the question of whether intentional interference with a contract could constitute a LUTPA claim.[137] The court held that an untenable claim for intentional interference with a contract cannot form the basis for a LUTPA claim if the same factual allegations that constitute the plaintiff's intentional interference claim, without any additional facts, also constitute the plaintiff's LUTPA claim.[138]

While the Fifth Circuit's decision in *American Waste* is binding, the Court notes that LUTPA's existence with other causes of action has caused much confusion and disagreement in the courts. The center of the controversy is how to apply LUTPA in conjunction with other causes of action. Some decisions, like *American Waste* for example, have held that there is no LUTPA violation unless the plaintiff demonstrates that he has another independent cause of action. Other decisions view a violation of state law in the business context as an almost *per se* violation of LUTPA.[139] Still other decisions recognize that LUTPA itself is a separate cause of action that exists independently of other causes of action.[140] The latter conclusion is most consistent with the statutory language of LUTPA.[141]

---

[136] *Id.* at 1390.

[137] *Id.* at 1391.

[138] *Id.* at 1392.

[139] *Jones v. Petty*, 577 So. 2d 821, 822 (La. App. 2d Cir. 1991); *Bryant v. Sears Consumer Financial Corp.*, 617 So. 2d 1191, 1196.

[140] *See, e.g.*, *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1499 (5th Cir. 1990); *Belle Pass Terminal v. Jolin, Inc.*, 618 So. 2d 1076, 1080-81 (La. App. 1st Cir. 1993).

[141] *See* La. Rev. Stat. Ann. § 51:1409(A) (West 1987). Section 1409(A) confers a right of private action on "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal" from unfair trade practices.

In *Taquino v. Teledyne Monarch Rubber*,[142] the Fifth Circuit supported the notion that LUTPA is a separate and independent cause of action. There, the plaintiff brought a separate action claiming breach of contract and a violation of LUTPA.[143] The lower court focused on the nature of the subcontractor's actions in a wholly independent analysis to determine whether the defendant violated LUTPA. The lower court then separately considered whether the defendant's actions constituted a breach of contract.[144] The Fifth Circuit adopted the reasoning of the lower court and included the lower court's opinion in an appendix to its own decision.[145]

In *Lambert v. Kenner City*,[146] the plaintiff originally asserted an intentional inference with contract claim, and in opposition to the defendant's motion for summary judgment, abandoned his claim for intentional inference with contract and, instead, asserted a LUTPA claim.[147] The plaintiff's LUTPA claim was based on the same facts as his intentional interference claim.[148] Relying on *American Waste,* the court found that because the plaintiff could not have sustained a claim for intentional interference with a contract, the plaintiff cannot state a cause of action under LUTPA.[149]

Here, Plaintiff argues that his claim for violation of LUTPA is not based on the same facts as his withdrawn intentional interference claim. A review of the original Complaint and the

---

[142] 893 F.2d 1488 (5th Cir. 1990).

[143] *Id.* at 1490, 1494–95.

[144] *Id.* at 1501.

[145] *Id.* at 1490.

[146] 2006 WL 66529 (E.D. La. Jan. 11, 2006).

[147] *Id.* at *3.

[148] *Id.* at *7.

[149] *Id.*

Amended Complaint show facts which would differentiate Plaintiff's current LUTPA claim from its withdrawn intentional inference claim. Specifically, the Amended Complaint raises the following additional factual allegations in support of the LUTPA claim:

(1) [A]fter Dodd joined Halliwell, McLarens adjusters frequently asked Ms. Witten if she would be joining Halliwell. Indeed, Christina Hodges, McLarens' Executive General Adjuster, told Ms. Witten that "Tracey [Dodd] really wants her team over at Halliwell."[150]

(2) Dodd directly or indirectly, through Halliwell (as a corporate officer) and McLarens (through its corporate officers Mr. Tae and Ms. Hodges) solicited Elizabeth Witten.[151]

(3) After Sedgwick placed Defendants on notice of Dodd's significant contractual obligations to Sedgwick, McLarens' General Counsel Liz Tubb sent a letter on October 17, 2024, on behalf of Dodd, McLarens, Halliwell, herself, and Gary Brown (McLarens' CEO). In this letter, Ms. Tubb represented that she was responding on behalf of all parties, and denied Dodd's involvement in the recruitment of Witten, Cardenas, Malave, and Jelin.[152]

(4) Additionally, in the October 17, 2024 letter, Ms. Tubb indicated an alleged intent to prevent actual, alleged, or suspected violations of Dodd's Agreement, representing that "Ms. Dodd, Halliwell, and McLarens" confirm that: 1) Dodd will not solicit any Sedgwick employee for two years following September 28, 2024; 2) Dodd has not taken and would not take Sedgwick's confidential information or documents; 3) Dodd will hold Sedgwick's confidential information in "the strictest confidence" and will not disclose any such information to any person or entity without Sedgwick's permission.[153]

(5) Defendants' October 17, 2024 letter materially misrepresents Dodd's involvement in the recruitment of Ms. Witten by claiming Dodd was not involved in the recruiting process, despite Ms. Hodges' statement to Ms. Witten that Dodd "really wants her team[.]"[154]

(6) Further, as described above, and in violation of the commitments made in their October 17, 2024 letter, Defendants' wrongful conduct has not stopped.[155]

As such, it cannot be said that Plaintiff's LUTPA claim is based solely on the same factual

---

[150] Rec. Doc. 36 at 9.

[151] *Id.*

[152] *Id.* at 16.

[153] *Id.*

[154] *Id.*

[155] *Id.*

allegations as his intentional interference claim. In essence, the Amended Complaint alleges that (1) Defendants possess Plaintiff's confidential information; and (2) Plaintiff's confidential information is being used to give Defendants an unfair business advantage. These allegations, taken as true, plausibly establish that Defendants engaged in unfair and unethical competition under LUTPA. Factual development is required to determine the extent of the alleged misconduct, making dismissal inappropriate at this stage.

Furthermore, while Defendants argue that the October 17, 2024 letter sent by defense counsel in response to Plaintiff's counsel threats of litigation cannot be used in support of the LUTPA claim, Defendants offer no authority to support this contention. Plaintiff does not appear to allege that the letter itself is an "unfair trade practice," rather the Amended Complaint references the letter to show notice, knowledge, and intent. Courts allow reference to pre-suit correspondence in pleadings where it helps show knowledge, intent, or bad faith.[156] For these reasons, the Court rejects Defendants' argument.

Defendants also argue that Plaintiff's claims under LUTPA should be dismissed because Plaintiff fails to identify the confidential information which Defendants allegedly possess. In support of this contention, Defendants reference Local Rule 26.3, arguing that Plaintiff is required to identify information that amounts to a trade secret with particularity. To the extent Plaintiff intended to assert that any trade secrets have been misappropriated,[157] Local Rule 26.3 is inapplicable here. Local Rule 26.3 applies to initial disclosures, not pleading requirements. In fact,

---

[156] *See e.g., Omnitech Intern., Inc. v. Clorox Co.,* 11 F.3d 1315 (5th Cir. 1994); *see also, In re Cabot Oil & Gas Corp. Derivative Litigation,* 596 F. Supp. 3d 755 (S.D. Tex. Mar. 31, 2022).

[157] The Louisiana Trade Secret Act is an outgrowth of, and has its basis in, Louisiana's unfair trade practices law. *See, e.g., Engineered Mechanical Services, Inc. v. Langlois,* 464 So.2d 329, 333 (La. Ct. App. 1984), *writ denied,* 467 So.2d 531 (La. 1985) (noting that, prior to the adoption of the Trade Secrets Act, trade secrecy protection was provided for in the LUTPA).

Local Rule 26.3 states that, "[t]he required particularity of this identifications differs from what may be adequate in a publicly filed pleading under applicable pleading rules such as FRCP 8." While Defendants are correct that allegations of fraud usually require heightened pleading requirements, courts have held that the heightened requirements imposed by Federal Rule of Civil Procedure 9(b) for pleading fraud do not apply to claims brought under the Federal Trade Commission Act.[158] As stated above, LUTPA was modeled after the Federal Trade Commission Act.[159] As such, it reasonably follows that the heightened pleadings requirement is also inapplicable to claims brought under LUTPA. For these reasons, the Court finds that Plaintiff's failure to identify the confidential information with particularity does not warrant dismissal.

Defendants also argue that Plaintiff's claims for civil conspiracy to violate LUTPA and for injunctive relief must be dismissed because Plaintiff fails to plausibly assert a claim under LUTPA. Civil conspiracies are actionable under Louisiana law.[160] However, civil conspiracies are limited to conspiracies involving tortious conduct.[161] The actionable element of conspiracy is the underlying tort. Injunctive relief is a remedy which must be tied to an underlying substantive claim. As stated herein, Plaintiff has plausibly asserted a claim under LUTPA. As such, Plaintiff's claims for civil conspiracy to violate LUTPA and injunctive relief also survive dismissal at the Rule 12(b)(6) stage.

---

[158] *See Federal Trade Commission v. Debt Relief USA, Inc.,* 2012 WL 13024099 (N.D. Tex. 2012); *Freecom Commc'ns*, 401 F.3d at 1204 n.7; *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 388 (D. Md. 2009); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008).

[159] *See* Andrews, 41 Loy. L. Rev. at 777.

[160] La. Civ. Code art. 2324.

[161] *See, e.g., Thomas v. North 40 Land Development, Inc.*, 894 So. 2d 1160, 1174 (La. Ct. App. 4th Cir. 2005); *Sullivan v. Wallace*, 859 So. 2d 245, 248 (La. Ct. App. 2d Cir. 2003); *Aranyosi v. Delchamps, Inc.*, 739 So. 2d 911, 917 (La. Ct. App. 1st Cir. 1999); *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. Ct. App. 1st Cir. 1998); *Hall v. Lilly*, 697 So. 2d 676, 678–79 (La. Ct. App. 2d Cir. 1997).

## V. Conclusion

For the reasons stated herein, the Court finds that the factual allegations raised in support of the LUTPA claims are distinguishable from the allegations raised in support of the withdrawn tortious interference with contract claim and the breach of contract claim against Dodd. Plaintiff has plausibly asserted a claim under LUTPA, civil conspiracy to violate LUTPA, and for injunctive relief. Therefore, the Court denies Defendants' motions to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss[162] are DENIED.

**NEW ORLEANS, LOUISIANA,** this __1st__ day of October, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[162] Rec. Doc. 38; Rec. Doc. 39.